UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEW SING YAP a/k/a PETER YAP and TASI NIMA
SHERPA, on behalf of themselves and others similarly
situated,

                              Plaintiffs,                          **OPINION AND ORDER**

          - against -                                              13 Civ. 6534 (ER)

MOONCAKE FOODS, INC. d/b/a MOONCAKE
FOODS SOHO, BUDDHA FOODS, INC. d/b/a
MOONCAKE FOODS CHELSEA, FAT DRAGON
FOODS INC., d/b/a MOONCAKE FOODS HELL'S
KITCHEN, ZEN MASTER FOODS, INC. d/b/a
MOONCAKE FOODS, PETER LEE, KENNY LUONG,
and AMY LUONG,

                              Defendants.

Appearances:

Marigold T. Bridgeman
Troy Law, PLLC
Flushing, NY
*Attorney for Plaintiffs*

Robert Y. Lewis
Alexander Linzer
Freeman Lewis LLP
New York, NY
*Attorneys for Defendants*

Ramos, D.J.:

          Plaintiffs Kew Sing Yap ("Yap") and Tasi Nima Sherpa ("Sherpa") (collectively,

"Plaintiffs") bring this action under the Fair Labor Standards Act ("FLSA"), the New York

Labor Law ("NYLL"), and New York's Codes, Rules, and Regulations ("NYCRR").  Compl.

(Doc. 1).  Plaintiffs allege that they and all other similarly situated employees are entitled to

wrongly withheld minimum wage, overtime, and spread-of-hours pay from the chain of four Manhattan restaurants operating under the banner Mooncake Foods ("MCF Chain").

Plaintiffs bring this suit against four corporate defendants and three individual defendants (collectively, "Defendants").  The four corporate defendants are the restaurants constituting the MCF Chain:  Mooncake Foods, Inc. d/b/a Mooncake Foods SOHO ("MCF SoHo"), Buddha Foods, Inc. d/b/a Mooncake Foods Chelsea ("MCF Chelsea"), Fat Dragon Foods, Inc. d/b/a Mooncake Foods Hell's Kitchen ("MCF Hell's Kitchen"), and Zen Master Foods, Inc. d/b/a Mooncake Foods ("MCF FiDi").  Plaintiffs allege that Defendant Peter Lee is the Chief Executive Officer and shareholder of the MCF Chain,[1] that Defendant Kenny Luong is the manager of MCF Chelsea and shareholder of the MCF Chain, and that Defendant Amy Luong is shareholder of the MCF Chain.  Compl. ¶¶ 11, 13–14.[2]  Plaintiffs also allege that all three individual defendants exercise "sufficient control of MCF Chain's day to day operations to be considered an employer of Plaintiffs and those similarly situated under the FLSA," and were all "actively involved in managing the restaurants' operations."  *Id.* ¶¶ 11–15.

Plaintiff Yap asserts that he was employed as a deliveryman at MCF Hell's Kitchen from January 1, 2011 through February 15, 2012.  Yap Affirmation in Support of Plaintiffs' Motion for Conditional Certification ("Yap Aff.") (Doc. 30) ¶ 5.  During that time, Yap claims that both he and his "co-workers" regularly worked more than forty hours per week, but were denied the full minimum wage, overtime, and spread-of-hours pay to which they were entitled under the FLSA and NYLL.  Yap Aff. ¶¶ 7–24; *see also* Compl. ¶¶ 32–39.

---

[1] Peter Lee describes himself as the "president" of the MCF Chain restaurants.  *See* Declaration of Peter Lee (Doc. 20) ¶ 2.

[2] Plaintiffs also alleged that Amy Luong is Peter Lee's sister and Kenny Luong is Amy Luong's husband and Lee's brother-in-law.  Compl. ¶¶ 13–14.  Plaintiffs' original complaint named Helen Lee, manager of MCF SoHo and wife of Peter Lee, as an individual defendant, Compl. ¶ 12, but Ms. Lee was later dismissed voluntarily from the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  *See* Stipulation (Doc. 33).

Plaintiff Sherpa asserts that he was employed as a chef at MCF SoHo from February 2008 to January 8, 2011.  Sherpa Affirmation in Support of Plaintiffs' Motion for Conditional Certification ("Sherpa Aff.") (Doc. 31) ¶ 5.  During that time, Sherpa claims that both he and his "fellow chefs" regularly worked more than forty hours per week, but were denied the full minimum wage, overtime, and spread-of-hours pay to which they were entitled under the FLSA and NYLL.  Sherpa Aff. ¶¶ 6–20; *see also* Compl. ¶¶ 32–39.

There are two motions before this Court.  First, on February 28, 2014, Defendants MCF Chelsea and MCF FiDi moved under Federal Rule of Civil Procedure ("FRCP") 12(c) for a judgment on the pleadings in their favor, arguing that Plaintiffs failed to allege facts plausibly demonstrating that these two particular MCF restaurants were Plaintiffs' "employers," as required under the FLSA.  (Doc. 17).  This motion is DENIED.[3]

Second, on March 3, 2014, Plaintiffs moved for conditional certification of a FLSA Collective Action constituting all hourly paid, non-managerial employees who worked at one of the MCF Chain restaurants during the past three years, and asked the Court to authorize expedited notice to the collective and to equitably toll the statute of limitations.  (Doc. 27).  This motion is GRANTED in part and DENIED in part.

## I. Plaintiffs Adequately Allege a Single Integrated Enterprise

Pursuant to FRCP 12(c), Defendants MCF FiDi and MCF Chelsea ask the Court to dismiss them from the case because they are distinct corporate entities for whom neither Plaintiff ever worked.  *See* Memorandum of Law in Support of Motion To Dismiss Defendants Buddha

---

[3] While this motion was originally styled as requesting a judgment on the pleadings under FRCP 12(c) or, in the alternative, summary judgment under FRCP 56, Defendants' subsequently acknowledged that the Court need only consider the 12(c) motion, and *not* the motion for summary judgment.  *See* Buddha Foods, Inc.'s and Zen Master Foods, Inc.'s Reply Memorandum in Further Support of Motion To Dismiss (Doc. 42) 6 n.3.

Foods, Inc. and Zen Master Foods, Inc. (Doc. 18) 4; *see also* Declaration of Peter Lee ("Lee Decl.") (Doc. 20) ¶ 4 (stating that each of the four MCF locations is separately incorporated, "has a separate set of books," has "its own bank account and Tax I.D. number," and does not co-mingle funds with other locations).  Plaintiffs respond in opposition that MCF FiDi and MCF Chelsea "are part of a single employer along with the other Mooncake Foods locations," and thus are properly named as defendants in the instant suit.  Memorandum of Law in Opposition to Defendants' Motion To Dismiss and Motion for Summary Judgment ("Pls.' Dismiss Opp'n") (Doc. 35) 1.

In so arguing, Plaintiffs rely on the so-called "single integrated enterprise" theory, Pls.' Dismiss Opp'n at 5–12, according to which "'an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.'"  *Spiciarich v. Mexican Radio Corp.*, No. 14-Cv-9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).  "The Second Circuit has never endorsed this theory of liability in the FLSA context, and district courts in this Circuit are divided on its application to FLSA and NYLL cases."  *Id.*[4]

The Court agrees with Plaintiffs that the theory is at least potentially available in FLSA cases, given the proper evidence.  "While the Second Circuit has yet to rule on whether the

---

[4] *Compare Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367–68 (S.D.N.Y. 2014) (applying single-integrated-enterprise theory in FLSA case), *Lopez v. Pio Pio NYC, Inc.*, No. 13 CV 4490 (HB), 2014 WL 1979930, at *3–4 (S.D.N.Y. May 15, 2014) (same), *Bravo v. Established Burger One, LLC,* No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *8–9 (S.D.N.Y. Oct. 8, 2013) (same), *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 510 (S.D.N.Y. 2013) (same), *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7–8 (S.D.N.Y. Feb. 28, 2013) (same), *Chen v. TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3–4 (S.D.N.Y. Mar. 21, 2012) (same), *with Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013) (rejecting use of single-integrated-enterprise theory in FLSA case), *Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4–5 (S.D.N.Y. Dec. 6, 2012) (same).

'integrated enterprise/single employer doctrine' is applied in FLSA cases, the 'shared policy concerns underlying the…doctrine and the FLSA' urge the theory's application to FLSA claims." *Lopez v. Pio Pio NYC, Inc.*, No. 13 CV 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) (quoting *Chen v. TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)). "Absent a clear resolution of this issue, district courts have discretion to consider the theory because the Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Id.* (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008)).

To determine whether distinct entities operate as a single integrated enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citation omitted). Based on these factors, Plaintiffs' submissions plausibly allege that the four Mooncake Foods restaurants operate as a single integrated enterprise, constituting a single employer for FLSA purposes.

In their complaint, Plaintiffs allege that all four MCF restaurants "are all members of a restaurant chain" that is owned, controlled, and operated by the same core team of individual defendants—Peter Lee, Kenny Luong, and Amy Luong. *See* Compl. ¶¶ 10–14. They allege that the individual defendants "had sufficient control of MCF Chain's day to day operations to be considered an employer," "were actively involved in managing the restaurants' operations," had "the power to hire and fire MCF Chain Employees," "oversaw the finances of the restaurant [sic]," and gave "orders" and "discipline[ed] employees." *Id.* ¶¶ 10–15. They also allege "common policies" and "practices" undertaken across all four locations that were in violation of

the FLSA, and chain-wide failures to provide proper notices and maintain proper records.  *Id.* ¶¶ 46, 51, 71, 77.[5]

Plaintiff Yap's affirmation provides additional facts, averring that all four MCF locations are commonly owned by the three individual defendants, and that those three defendants "monitor employees and manage the restaurants."  Kew Sing Yap Affirmation in Opposition to Defendants' Motion ("Yap Dismiss Aff.") (Doc. 37) ¶¶ 5, 8.   Plaintiff Yap's affirmation states that Defendant Lee "would interview wait staff," "manage the finances of the restaurants," and "pay all deliverymen for all Mooncake Foods locations" along with Defendant Kenny Luong. *Id.* ¶¶ 9–10.  Defendant Lee confirmed that he was indeed "the president" of all four MCF locations.  Lee Decl. ¶ 2.  Furthermore, Plaintiff Yap states that Defendant Kenny Luong "would manage the kitchen…and would manage the deliverymen," which included directing deliverymen across all four MCF locations to fill in whenever a specific location was shorthanded.  Yap Dismiss Aff. ¶¶ 11, 16.  Plaintiff Yap buttresses the inference that management of deliverymen was centralized by stating that all deliverymen across all locations "were recorded in a book" and "were interchanged [among] all Mooncake locations."  *Id.* ¶¶ 14– 15.  Plaintiff Yap also adds that Defendant Amy Luong "would manage the wait staff and would sometimes drive the sauces, marinade, freshly cut vegetables and meat to all the various locations."  *Id.* ¶ 12.  Plaintiff Sherpa corroborates these facts in his own affirmation, stating that he "often" saw Defendants Peter Lee, Amy Luong, and Kenny Luong "collecting money" and "supervising the employees and the activities" at MCF SoHo.  Sherpa Aff. ¶ 15.

---

[5] The Court rejects Defendants' contention that Plaintiff has failed to even include an allegation that all four MCF locations constituted a single integrated enterprise.  *See* Buddha Foods, Inc.'s and Zen Master Foods, Inc.'s Reply Memorandum in Further Support of Motion To Dismiss (Doc. 42) 5–6.  This argument requires a highly formalized and technical reading of the complaint that is inappropriate in the context of a dispositive motion in which all favorable inferences are drawn in favor of the non-movant.

Finally, the interrelation of operations is further demonstrated by the three attachments Plaintiffs' counsel submitted in opposition to Defendants' motion:  the single website shared among all four locations, the single menu shared among all four locations, and a W-2 form that Plaintiff Sherpa received from MCF Chelsea, despite his cooking exclusively at MCF SoHo.  *See* Declaration of Marigold T. Bridgeman ("Bridgeman Decl.") (Doc. 36) Exs. 2–4 (website, menu, and W-2 form); *see also* Yap Dismiss Aff. ¶ 19 ("All menus are the same….").

Taken together, Plaintiffs have adequately alleged that Defendants together constitute a single integrated enterprise for purposes of potential FLSA liability.  *See, e.g.*, *Juarez*, 29 F. Supp. 3d at 368 (finding sufficient factual allegations of (i) "interrelated operations" based on shared "website, décor, menus, and uniforms," (ii) common management, ownership and financial control based on single common owner, and (iii) "centralized control of labor relations" based on "core allegations of unlawful pay practices," employees working across multiple locations, and owner's chain-wide role in hiring and payment practices); *Bravo*, 2013 WL 5549495, at *8–9 (same, based on joint advertisement on single website, unified marketing, same menus, shared employees and food among locations, and common management and payroll methods).  Even if Plaintiffs' allegations are disputed by Defendant Peter Lee's affirmation confirming the separate corporate and tax statuses of each MCF Chain location, "[w]hether or not Defendants operated as a single enterprise is a complicated and fact-specific inquiry that is not properly determined at the class certification stage."  *Tiro v. Pub. House Invs., LLC*, 288 F.R.D. 272, 279 (S.D.N.Y. 2012).  Thus, the fact that the MCF Chain locations may be distinct corporate entities "does not insulate them from liability at this stage, because all Defendants that compose the enterprise count as Plaintiff[s'] employer" and are thus potentially liable for violations of the FLSA that took place at any of the four locations.  *Juarez*, 29 F. Supp. 3d at

368.  Defendants Buddha Foods, Inc.'s and Zen Master Foods, Inc.'s motion for judgment on the pleadings is denied.

## II. Conditional Certification of FLSA Collective Action

### A.  Legal Standard

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs.  29 U.S.C. § 216(b) (2012).  "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'"  *Mark v. Gawker Media LLC*, No. 13-cv-4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b).  *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 387 (2d Cir. 2015). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages:  an early "notice stage," and again after discovery is largely complete.  *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555 (citations omitted).   At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by

determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the Plaintiffs." *Id.*   If the court concludes that they are not similarly situated, the action may be "de-certified," and the opt-in plaintiffs' claims "may be dismissed without prejudice." *Id.*

Here, Plaintiffs seek an initial determination of the propriety of notice to putative opt-in plaintiffs.  "Because minimal evidence is available" at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiffs face a "'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).  They must only make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (citations omitted). "Accordingly, in deciding whether to grant the Plaintiffs' motion, the Court must merely find 'some identifiable factual nexus which binds the Plaintiffs and potential class members together as victims of a particular practice.'" *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261).

In considering Plaintiffs' motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).  It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F. Supp. 2d at 442 (citation

omitted).  If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members.  *Id.* (citation omitted).

**B.  Discussion**

Plaintiffs seek to conditionally certify a collective that spans all eligible employees across the whole MCF Chain, arguing that all are similarly situated with respect to Defendants' chain-wide policy and practice of denying minimum and overtime wages.  Specifically, Plaintiff seek a collective that includes:

> all of those hourly paid, non-managerial employees of the Defendants, including but not limited to chefs, waiters, kitchen workers, dishwashers, delivery persons or any other equivalent employee, who previously worked, or is currently working at one of the Defendants' restaurants during the past three (3) years and who:
>> (i) worked overtime during that period;
>> (ii) did not receive minimum wages for all hours worked;
>> (iii) did not have their employment period properly recorded;
>> (iv) were denied meal breaks;
>> (v) were not informed about tip credit rules, or were required to pool tips with managerial or non-service employees; or
>> (vi) were not compensated for purchase and maintenance of delivery vehicles.

Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice ("Pls.' Cert. Br.") (Doc. 28) 4.

Defendants concede that Plaintiffs' complaint and affirmations make a sufficient showing of similarity with respect to delivery people at MCF Hell's Kitchen and chefs at MCF SoHo.  *See* Defendants' Memorandum of Law in Partial Opposition to Plaintiffs' Motion for Conditional Collective Action Certification and Authorized Notice ("Defs.' Cert. Opp'n") (Doc. 39) 3, 8. The FLSA collective in this case, therefore, will include at least those delivery people from MCF Hell's Kitchen and chefs from MCF SoHo who worked within the applicable terms under the statute of limitations.  But Defendants oppose a collective that is any broader.  The remaining

questions are thus whether to include within the collective (i) delivery people from locations other than MCF Hell's Kitchen, (ii) chefs from locations other than MCF SoHo, and (iii) other types of employees (e.g., waitresses, busboys, etc.) across all MCF Chain locations.

Defendants first argue that the Plaintiffs cannot represent *any* employees from MCF Chelsea or MCF FiDi because the Plaintiffs were themselves never employees at those two restaurants. Defs.' Cert. Opp'n 3–4. This argument has no merit, however, because "[i]n this Circuit, courts have regularly found Plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y.2011) (collecting cases)).

Moving beyond their attempt at a categorical prohibition, Defendants next maintain that "the allegations in the complaint and in the affirmations do not make a sufficient showing of similarity" between the Plaintiffs and employees at MCF Chelsea or MCF FiDi. Defs.' Cert. Opp'n 4. With respect to certification across multiple retail locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that…a uniform policy or practice exists, and whether the locations share common ownership or management." *Hamadou*, 915 F. Supp. at 662–63 (citations omitted).

The Court finds that Plaintiff Yap's affirmation provides the modest factual showing required to certify a collective that includes delivery people across all four MCF Chain locations. Specifically, Yap states that during his year-and-change working as a deliveryman for MCF Hell's Kitchen, he worked approximately sixty-and-one-half (60.5) hours a week, was paid $500 in cash every two weeks but was nonetheless "required to sign in a book that [he] received

$800," never had his hours or pay recorded by Defendants, and was not provided any written information by Defendants about minimum wage or overtime.  Yap Aff. ¶¶ 5, 8–11.  Yap also states that he "knows" Defendants did not pay "many of [his] co-workers their minimum wage and overtime or record the hours they worked" because Yap and his co-workers "would discuss and compare [their] wages over coffee on [their] limited breaks," and adds that he personally "know[s]" or "know[s] of" three deliverymen each from MCF SoHo, Chelsea, and Hell's Kitchen "who were paid similarly to [him] based on conversations."  *Id.* ¶¶ 14–20.  Critically, and tellingly omitted from Defendants' discussion of his affirmation, Defs.' Opp'n 6, Yap also avers that all deliverymen from all locations "had to sign the same book that read that [they] received $800," that the book "listed the names of all deliverymen from all locations," that deliverymen were "interchanged [among] all Mooncake locations" to compensate at times when a given location was "shorthanded," and that deliverymen from MCF Hell's Kitchen would often deliver food from MCF Chelsea instead, either when the latter was understaffed, or when food for MCF Hell's Kitchen was prepared at MCF Chelsea, as was the case a "majority" of the time given the small size of the Hell's Kitchen location.  *See* Yap Aff. ¶¶ 21–22, 25–27.  This is a sufficient "minimum level of detail" to justify certification.  *See Reyes v. Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) (noting the "consensus" in this district is that "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations").  All of these factual showings taken together, particularly those about the signature book containing false payment information, allows the Court to infer a common policy of FLSA violations as to all delivery people across all four MCF locations.  *See, e.g.*, *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-Cv-2848 (SHS), 2015 WL

1514950, at *3–4 (S.D.N.Y. Apr. 1, 2015) (certifying collective across multiple restaurant locations based on affidavit of single employee, where employee testified to common ownership and personal conversations with employees who rotated among different locations); *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595 (RJH), 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (holding that plaintiffs who worked at five of eight total restaurants were similarly situated to employees at remaining three locations because the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share a common ownership, are supervised by the same individuals, and are administered by the same company").

Likewise, the Court also finds that Plaintiffs have made a sufficient factual showing to certify a collective that includes chefs across all four MCF Chain locations.  Plaintiff Sherpa states that during his near-three-year stint as chef at MCF SoHo, he worked roughly seventy-two hours per week, was paid from $1000 semi-monthly to $1750 semi-monthly during that time, was never compensated at one-and-one-half times his normal rate for work in excess of forty hours per week, never received any written notice about minimum or overtime wages, and never had his total number of hours and monthly pay accurately recorded by Defendants.  *See* Sherpa Aff. ¶¶ 5–12, 14.  Sherpa also states that he "personally know[s] of three to five chefs" at MCF SoHo and MCF Chelsea who "worked the same number of hours" and "were paid similarly" to Sherpa, that "all chefs from all locations work substantially the same hours" as Sherpa worked, that Sherpa's "fellow chefs" were not compensated at one-and-one-half times their rate for all hours worked over forty hours per week, and that Defendants did not pay Sherpa's "friends" and "other chefs" overtime or spread-of-hours pay or record their hours worked.  *See id.* ¶¶ 13, 16–20.  Other evidentiary submissions also strongly suggest uniformity in the management and operation of chefs across all four MCF Chain locations—namely (i) Yap's testimony that meat,

vegetables, and sauces would be driven around from location to location, including consistent weekly food deliveries from MCF Chelsea to MCF Hell's Kitchen, Yap Dismiss Aff. ¶¶ 12–13, (ii) the single common menu shared across all four locations, Bridgeman Decl. Ex. 3, and (iii) the fact that one of Sherpa's W-2 forms was issued by MCF Chelsea instead of the location where he worked exclusively, MCF SoHo, Bridgeman Decl. Ex. 4. All of these facts, taken together, adequately suggest that the chefs at all MCF locations were or are similarly situated to Sherpa. *See, e.g.*, *Juarez*, 29 F. Supp. 3d at 372 (noting that a plaintiff's lack of direct knowledge about policies at related restaurants "does not prevent him from meeting his minimal burden with circumstantial evidence—such as a corporate structure tending to suggest common ownership and control"); *Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12 Civ. 1054 (TPG), 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) (holding that plaintiff's testimony about pay practices at one location "provides adequate evidence to indicate that employees at other restaurants controlled by defendants may be similarly situated"); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 & n.1 (S.D.N.Y. June 1, 2012) (approving conditional collective certification across three restaurants based on single plaintiff's affidavit describing common ownership).

Defendants object to the inclusion of any employees from the two locations at which Plaintiffs Yap and Sherpa never worked, arguing that Plaintiffs' "allegations of similarity are wholly conclusory and lacking in specificity," and that courts "require far more detail and evidence of similarity" than Plaintiffs have provided here. Defs.' Cert. Opp'n 4–7. But courts in this district "routinely certify[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices." *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-cv-813 (CM), 2014 WL 5055813, at

*4 (S.D.N.Y. Oct. 7, 2014) (collecting cases, and certifying collective based on single plaintiff's

personal knowledge based on "his observations and his conversations with his coworkers"); *see

also Ramos v. Platt*, No. 13-CV-8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23,

2014) ("[C]ontrary to Defendants' arguments, conditional certification may be granted on the

basis of the complaint and the plaintiff's own affidavits."); *Hernandez v. Bare Burger Dio Inc.*,

No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases to

support proposition that "courts in this circuit have routinely granted conditional collective

certification based solely on the personal observations of one plaintiff's affidavit").

Furthermore, Defendants overstate the degree to which the affidavits here lack specificity, as

"each named Plaintiff discusses" both (i) different bases for their knowledge of common

practices constituting FLSA violations and (ii) "different facts regarding the terms of his

employment, including: the dates [they were] employed; the number of hours per week [they]

worked; [their] job responsibilities; and [their] hourly wage." *Guzelgurgenli*, 883 F. Supp. 2d at

351 (rejecting defendants' argument that plaintiffs' declarations were "boilerplate").  Thus,

Plaintiffs' two affirmations here, plus the exhibits accompanying the Bridgeman Decl.,

comfortably satisfy the modest factual showing that is required for certification of all delivery

people and all chefs at this stage.[6]  "Should facts develop suggesting that any opt-in plaintiffs are

---

[6] Defendants point to some cases in which Plaintiffs failed to provide a sufficient factual showing.  *See* Defs.' Cert.
Opp'n 4–5.  Those cases are factually distinct and, indeed, consistently apply the "modest factual showing"
requirement that Plaintiffs here have met.  For example, in *Levinson v. Primedia Inc.*, the only factual showings
went to the specific named plaintiffs in that case, and there was no evidence demonstrating that other potential
plaintiffs were paid "hourly rates below minimum wage" or worked "overtime hours without overtime pay," such
that "Plaintiffs' attempts to broaden their allegations beyond the existing plaintiffs [were] insufficiently specific to
make such a showing."  No. 02 Civ. 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003).  And in
*Morales v. Plantworks, Inc.*, plaintiffs' affidavits and exhibits, unlike those in this case, "contain[ed] no reference to
any [] employee other than plaintiffs," and they made "no allegations of a common policy or plan to deny plaintiffs
overtime."  No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006).  Furthermore, even if
Plaintiffs' affidavits here are "relatively sparse with facts, defendants have put forth no reason to suggest that [their]
employees who claim not to have been paid their required [minimum wage and overtime] should not be able to
litigate their claims collectively."  *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL
208909, at *2 (S.D.N.Y. Jan. 10, 2013).  "In this way, the instant motion differs from cases where courts have

15

not similarly situated, defendants may move for decertification at that time." *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013).

Finally, Defendants object to the inclusion of any other types of employees besides delivery people and chefs, arguing that Plaintiffs "make no allegation that other types of employees they seek to represent were subject to the same pay policy and practices as they allege that they were themselves." Defs.' Opp'n 8–9. "In the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Guaman v. 5 M Corp.*, No. 13 Civ. 03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010)). Here, however, the Court agrees with Defendants that Plaintiffs have failed to muster a showing of a common policy or practice. Plaintiffs' complaint and affidavits do not contain a single factual allegation specific to other types of employees besides delivery people and chefs, such as "the specific hours worked by, or the amounts paid to, other employees." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014). Rather, Plaintiffs contend only that their allegations about deliverymen and chefs allow the Court to draw an "inference" that Defendants "failed to pay other employees such as wait staff, bussers, etc., their entitled overtime." Plaintiffs' Reply in Support of Plaintiffs' Motion for Conditional Collective Action Certification and Authorized Notice ("Pls.' Cert. Rep.") (Doc. 41) 3. But Plaintiffs do not cite a single case permitting such an inference absent a modest but *job-specific* factual showing, which is what courts in this district usually require. *See, e.g.*, *Garcia v.*

---

denied conditional certification in the face of minimalist supporting affidavits." *Id.* (distinguishing, *inter alia*, *Levinson*, 2003 WL 22533428).

*Spectrum of Creations Inc.*, No. 14 Civ. 5298 (GWG), 2015 WL 2078222, at *7 (S.D.N.Y. May 4, 2015) (limiting certification to only those individuals who performed plaintiffs' specific job positions, because plaintiffs' affirmations "provide[d] no information…about individuals who performed other job functions at defendants' business"); *Guo*, 2014 WL 5314822, at *3–4 (S.D.N.Y. Oct. 16, 2014) (certifying collective of deliverymen only, because plaintiff provided only "vague, conclusory, and unsupported assertions" about other types of employees). Plaintiffs have failed, therefore, to demonstrate that other types of MCF employees—*i.e.*, employees other than delivery people or chefs—were subject to a common policy or practice in violation of FLSA.

In sum, the Court grants conditional certification of a FLSA collective that includes all delivery people and all chefs who worked at any of the four MCF Chain locations from September 17, 2010 to the present.

### III. Equitable Tolling

Plaintiffs request that the statute of limitations on this suit "be tolled for 90 days until the expiration of the Opt-in period."  Pls.' Cert. Br. 11.  In FLSA cases, where the "willfulness" of the alleged violations is disputed, as it is here, Compl. ¶¶ 46, 52, "the court applies the three-year statute of limitations for purposes of certifying a representative action."  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (citation omitted).

As stated above, the Court is conditionally certifying a collective that dates back to three years before the filing of the original complaint in this case, despite the fact that "the statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint."  *Gaspar v. Pers. Touch Moving, Inc.*,

No. 13-cv-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (citing 29 U.S.C. § 256(b); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 Civ. 5651 (AJN), 2013 WL 3466810, at *4 n.2 (S.D.N.Y. July 8, 2013)).  Because "equitable tolling issues often arise as to individual opt-in plaintiffs," however, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Id.* (citation and internal quotation marks omitted).  The Court notes that there is a particularly strong basis for potential equitable tolling here given the significant delay in ruling on this motion.  Indeed, some courts in this district "have found that the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is enough to grant equitable tolling." *Guzman v. Three Amigos SJL Inc.*, No. 14 Civ. 10120 (GWG), 2015 WL 4597427, at *10 (S.D.N.Y. July 30, 2015) (citing *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436, at *6 (S.D.N.Y. Jan. 20, 2015); *McGlone*, 867 F. Supp. 2d at 445).

Assuming the significant delay in deciding this motion merits equitable tolling, it is "not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice. Where, as here, the Court permits notice to be effectuated upon a large class of Plaintiffs, the determination as to the timeliness of each future plaintiff's action is better reserved for a future proceeding." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (citing *Thompson v. World All. Fin. Corp.*, No. 08 Civ. 4951 (AKT), 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010)).  That is especially true in this case, where neither party has had the opportunity to brief the issue of equitable tolling in light of the delay in deciding the instant motion.  Plaintiffs' request for equitable tolling is thus denied, but individual plaintiffs may seek such tolling upon opting-in and demonstrating its applicability to his or her

case.  *See, e.g.*, *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at

*10 (S.D.N.Y. Sept. 16, 2013) ("The Court will permit notice to be distributed to all potential

plaintiffs employed within three years of the date of the filing of the Complaint, and defer

consideration of the statute of limitations until after the opt-in period.  At that time, any

individual would-be plaintiffs whose claims have expired may seek equitable tolling as it may

apply to them.").

## IV. Form and Content of Proposed Notice

The final set of issues involves the form and method of distribution of the court-

authorized notice to be sent to the potential opt-in class of similarly-situated MCF employees.

"By monitoring preparation and distribution of the notice, a court can ensure that it is timely,

accurate, and informative.  Both the parties and the court benefit from settling disputes about the

content of the notice before it is distributed."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

172 (1989).  "[T]he district court has discretion regarding the form and content of the notice."  *In

re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *5

(S.D.N.Y. Oct. 27, 2010) (citation omitted).

Here, Plaintiffs submitted a proposed notice and Defendants requested multiple

alterations to it.  *See* Declaration of Marigold T. Bridgeman in Support of Motion for

Conditional Collective Certification (Doc. 29), Ex. 5 ("Proposed Notice"); Defs.' Cert. Opp'n

10–12.  The parties have four core disputes about Plaintiffs' proposed notice:  (1) whether the

opt-in period should be sixty days or ninety days, (2) whether the notice should be posted in

common employee spaces at MCF Chain locations, in addition to being mailed, (3) whether the

notice should inform potential opt-in plaintiffs of the possibility that they will have to participate

in discovery and testify at trial, and (4) whether opt-in forms sent in response to the notice should be delivered to Plaintiffs' counsel or the Clerk of the Court.  *See* Defs.' Cert. Opp'n 10–12; Pls.' Cert. Rep. 5–7.

First, although Plaintiffs requested a ninety-day opt-in period, they make no substantive arguments in response to Defendants' proposed sixty-day period, such as explaining why special circumstances in this case would warrant a longer-than-normal opt-in period.  As a result, and since "[c]ourts in this Circuit routinely restrict the opt-in period to sixty days," the opt-in period in this case will be sixty days. *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases in which sixty-day period is imposed due to absence of plaintiff's arguments in support of ninety-day period) (citations and internal quotation marks omitted).

Second, the Court grants Plaintiffs' request to post the notice in common employee areas in MCF Chain locations.  "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn*, 767 F. Supp. 2d at 449 (citations omitted).  "Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Mendoza*, 2013 WL 5211839, at *9.  Furthermore, "Defendants do not explain how such a posting would be more burdensome in this case." *Whitehorn*, 767 F. Supp. 2d at 449.  Thus, in addition to the traditional mailing of notice that is the core of FLSA's conditional certification process, the Court also authorizes posting of the notice and opt-in form "in a common, non-public employee space" in each of the MCF Chain locations "where they will be easily visible to employees." *Mendoza*, 2013 WL 5211839, at *9.

Third, the parties are directed to confer and agree on a "neutral and non-technical reference to discovery obligations," which has the advantage of "providing notice regarding potential obligations" while mitigating the "possibility of dissuading potential plaintiffs" from opting in.  *Id.* at \*7 (citing *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG), 2011 WL 317984, at \*11 (E.D.N.Y. Feb. 1, 2011)); *see also Guo*, 2014 WL 5314822, at \*5 ("To help potential opt-in plaintiffs make an informed decision about whether to join this litigation, a brief explanation of the potential responsibilities of opt-in plaintiffs is appropriate here.").

Fourth, the Court denies Defendants' request that opt-in forms be sent to the Clerk of the Court.  Rather, opt-in forms will be sent to Plaintiffs' counsel.  *See Guo*, 2014 WL 5314822, at \*5 ("The majority of courts…have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel.") (citations omitted).  The Court denies this request mindful of the fact that Plaintiffs' proposed notice "explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney, mitigating concerns that putative class members may be discouraged from retaining their own counsel."  *Id.* (citations omitted); *see also* Proposed Notice at 5.

Lastly, Plaintiffs have not responded to Defendants' requests that the notice provide contact information for Defendants' counsel, and thus Defendants' request is granted.  *See, e.g.*, *Escano v. N&A Produce & Grocery Corp.*, No. 14-cv-4239 (PAC), 2015 WL 1069384, at \*2 (S.D.N.Y. Mar. 11, 2015) ("Courts regularly permit inclusion of defense counsel's contact information on such notices.") (citation omitted).  Further, Defendants' request that the notice state that the Court has expressed no opinion as to the merits of Plaintiffs' claim is moot, Defs.' Cert. Opp'n 11, as Plaintiffs' proposed notice already does just that, Proposed Notice at 3.

**V. Conclusion**

The Court DENIES Defendants Buddha Foods, Inc.'s and Zen Master Foods, Inc.'s motion for judgment on the pleadings or summary judgment. (Doc. 17).

The Court GRANTS in part and DENIES in part Plaintiffs' motion for conditional certification. (Doc. 27). The Court hereby ORDERS conditional certification of a FLSA collective of all delivery people and chefs employed by any MCF Chain locations from September 17, 2010 to the present day. Defendants are ORDERED, within twenty-one (21) days of this Opinion and Order, to produce a list of the names and last-known addresses of all delivery people and chefs employed at any MCF Chain location from September 17, 2010 to present.

Furthermore, Plaintiffs and Defendants are hereby ORDERED to meet and confer on a newly-revised notice that incorporates the Court's rulings above. The parties should submit a joint proposed notice to the Court for final approval within twenty-one (21) days of this Opinion and Order. The parties should also agree on a common, non-public employee space within each MCF Chain location that is suitable for the posting of notice and opt-in form.

The Clerk of the Court is respectfully directed to terminate the instant motions, Doc. 17 and Doc. 27.

It is SO ORDERED.

Dated:     November 18, 2015
           New York, New York

                                              _____
                                              Edgardo Ramos, U.S.D.J.